IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-01763-WYD-KMT

ALPHA PRIME DEVELOPMENT CORPORATION,

    Plaintiff,

v.

HOLLAND LOADER COMPANY, LLC; and
STEVEN MICHAEL SVATEK,

    Defendants.

---

**ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Plaintiff's Motion for Partial Summary Judgment and Supporting Memorandum filed October 2, 2009. This motion seeks summary judgment on the first claim for relief for delivery of nonconforming goods against Defendant Holland Loader Company, LLC ["HLC"].

Plaintiff Alpha Prime Development Corporation ["APDC"] asserts that summary judgment on the first claim is proper based on HLC's admitted failure to deliver a refurbished piece of coal mining equipment – termed a "Holland 610 Loader" ["Loader"] - that APDC purchased from HLC and HLC's admitted refusal to refund APDC's money. APDC seeks judgment in the amount of $552,344.50 plus prejudgment interest, which includes the purchase price of the equipment ($475,000) and costs associated with delivery.

Defendant HLC filed a response to the summary judgment motion on October 26, 2009, and APDC filed a reply on November 13, 2009. Also pending is Defendant HLC's Motion to Strike Declaration of Joseph Havlin in Support of Plaintiff's Motion for Summary Judgment ["motion to strike].

For the reasons stated below, HLC's motion to strike is granted in part and denied in part and Plaintiff's Motion for Partial Summary Judgment is denied.

## II. ANALYSIS

### A. Motion to Strike Havlin Declaration

I first address HLC's Motion to Strike Declaration of Joseph Havlin in Support of Plaintiff's Motion for Summary Judgment. The motion seeks to strike selected portions of Joseph Havlin's Declaration attached to Plaintiff's Motion for Partial Summary Judgment ["Havlin Decl."] based on his lack of personal knowledge and the inadmissibility of documents attached to his declaration.

Federal Rule of Civil Procedure 56(e)(1) requires that an affidavit "supporting or opposing [a motion for summary judgment] . . . be made on personal knowledge . . . and show that the affiant is competent to testify on the matters stated." "Under the personal knowledge standard, an affidavit is inadmissible if 'the witness could not have actually perceived or observed that to which he testifies to.'" *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (quotation and internal quotation marks omitted) . "Accordingly, at the summary judgment stage, 'statements of mere belief' in an affidavit must be disregarded.'" *Id.* (quotation omitted). Further, hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat

summary judgment *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 485 (10th Cir. 1995). To enforce this rule, the court ordinarily does not strike affidavits, but simply disregards those portions that are not shown to be based upon personal knowledge or do not otherwise comply with Rule 56(e). *Stevens v. Water Dist. One of Johnson County*, 561 F. Supp. 2d 1224, 1231 (D. Kan. 2008).

In its motion HLC asserts that Joseph Havlin ["Havlin"] is not competent to testify regarding the fact that the Holland 610 Loader was to be delivered to Mexico in a refurbished condition and that APDC planned to use the Loader soon after delivery. HLC argues that both of these assertions are related to APDC and HLC's negotiations for the sale of the Loader which occurred between May and July of 2008, and that Havlin first began working for APDC in mid-August of 2008. Further, Havlin was not involved in the negotiations between APDC and HLC for the purchase of the Loader prior to September 2008. Accordingly, HLC asserts that Havlin has no personal knowledge of the parties' agreement or APDC's intentions regarding the Loader prior to September 2008, and that any knowledge he has regarding these allegations are derived from hearsay.

I first address Havlin's statements that the Loader was to be delivered in refurbished condition. According to Havlin, this statement was based on the language of the July 1, 2008 invoice attached as Exhibit 1 to his declaration. (Havlin Supp. Declaration, Ex. 1 to Pl.'s Reply Memo. in Support of Mot. for Partial Summ. J. ["Havlin Supp. Decl."], ¶ 12). I agree with APDC that this invoice appears to be admissible both as a party admission and business record and thus find that Havlin's knowledge about

the invoice is not based on hearsay. Accordingly, I deny this portion of the motion to strike.

To the extent that HLC asserts that Havlin had no personal knowledge that the Loader was to be delivered to Mexico, Havlin also addresses this issue in his Supplemental Declaration. Specifically, he asserts that he became familiar with the terms of the purchase shortly after he commenced employment on October 1, 2008 through document review and correspondence exchanged with several people. (Havlin Supp. Decl., ¶ 11.)

I find that Havlin's statements in the Declaration on this issue should be allowed. He is employed as Chief Financial Officer of APDC (Havlin Decl., ¶ 1), and it can be inferred that he learned this information about the Loader through his review of business records of the company as part of his position. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005) (declining to strike affidavit that did not allege personal knowledge where it was reasonably within affiant's position to be familiar with the investigation as described in the affidavit) (citing cases); *Univ. of Kansas v. Sinks*, 565 F. Supp. 2d 1216, 1227 (D. Kan. 2008) (statements in declaration were admissible when prefaced by the language, "the facts set forth in this Declaration are based on my personal knowledge, review of corporate records, or interviews with appropriately knowledgeable persons" as "personal knowledge of the subject matter could be inferred based on the declarants' respective positions); *Hammerton, Inc. v. Heisterman*, No. 2:06-cv-806 TS, 2008 WL 852046, at *6 (D. Utah March 27, 2008) (statements in declaration concerning plaintiff's sales data, products, and advertising were admissible

as the affiant, "as plaintiff's president, 'oversee[s] the manufacture, marketing and sales of its products, as well as the creation and maintenance of its financial records,' and therefore has personal knowledge of the company's finances. . . even though they may have occurred prior to his hiring") (quotation omitted); *Vakas v. Transamerica Occidental Life Ins. Co.*, 242 F.R.D. 589, 592 (D. Kan. 2006) (statements by employee "about the records maintained by defendant and the facts those records put forth" as well as the way the defendant handled a life insurance policy, "from an internal point of view, based on [affiant's] review of the records", were compliant with Rule 56(e)). Accordingly, the motion to strike is also denied on this issue.

Finally, Havlin asserts that his statement in his initial Declaration that APDC planned to use the Loader soon after delivery is based on the job requirements that he was hired to perform. He states that a complete management team, including himself, was hired to begin operations at the mining concessions as soon as the Holland 610 Loader and other necessary equipment were delivered. (Havlin Supp. Decl., ¶ 13.)

I find that this statement should be admitted to the extent that Havlin learned this information as part of his job requirements, as this does not appear to be based on hearsay and is knowledge that can be inferred based on his position with the company. Further, in support of its argument that APDC allegedly was not concerned about the delivery date of the 610 Holland Loader following the discovery of insignificant coal deposits, HLC cites frequently to alleged conversations with Havlin (HLC Resp. to Pl.'s Mot. for Partial Summ. J. ["HLC's Resp."] at 3-4); thus, it can be inferred that Havlin learned about the timing of the delivery date of the Loader as part of his job.

However, Havlin's statements in the Declarations will not be considered to the extent they may be used to support what the parties discussed during the negotiations that occurred before Havlin was employed at APDC. Neither the Declaration not the Supplemental Declaration provide information to suggest that Havlin has personal knowledge of this other than through hearsay or information he learned after becoming employed. Accordingly, this portion of the affidavit will be disregarded and the motion to strike is granted on this issue. *See Goad v. Buschman Co.*, No. 08-5065, 2009 WL 721556, at *3 (10th Cir. March 19, 2009) (testimony in affidavit that a conveyor system was "not intended to be permanent" was not admissible even though affiants were employed when system was installed, because "nothing in their affidavits suggests that either one has any personal knowledge of what the parties intended with regard to permanence"); *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (it was abuse of discretion to consider information in affidavit under Rule 56(e) when the affiant "was not personally involved in any of the disciplinary suspensions at issue" and did not show that he personally reviewed any business records regarding the suspension).[1]

---

[1] *See also Fleming v. Evans,* No. CIV-05-690-C, 2010 WL 199647, at *5-6 (W.D. Okla. Jan. 14, 2010) (rejecting argument that the affiant obtained personal knowledge "by virtue of his 'conversations and learning'"); *West Ridge Group, L.L.C. v. First Trust Co. of Onaga*, No. 07-cv-01587-WYD-BNB, 2009 WL 641258, at *3 (D. Colo. March 10, 2009) (statements in affidavit were inadmissible which began "I am informed that. . ." as they were "clearly not based on the affidavits personal knowledge"; also, while the affidavit referred to terms in a note and deed of trust and his interpretation of same, it was unclear whether affiant actually reviewed these documents as he stated that he "talked" to others about the terms contained in those documents); *Warren v. Liberty Mut. Fire Ins. Co.*, 505 F. Supp. 2d 770, 779 (D. Colo. 2007) (officer's statement that "[a]t the time of renewal of the Policy in March 2002, defendant sent the [Insureds] a copy of the Policy" was inadmissible under Rule 56(e) as he did not begin working for the defendant until after the accident and thus had no personal knowledge of the interaction between the parties), *aff'd in part, rev'd in part on other grounds*, 555 F.3d 1141 (10th Cir. 2009).

HLC also argues that the Court must strike and disregard many of the exhibits attached to the Havlin Declaration because the documents are inadmissible, and the Declaration fails to lay the proper evidentiary foundation to make them admissible. I deny this portion of the motion. As to Exhibits 1 through 3, these exhibits have now properly been authenticated through Havlin's Supplemental Declaration as business records. Further, Exhibit 1 appears to be admissible as a party admission.

HLC also asserts that Exhibit 9 to Havlin's Declaration, which consists of photographs of the pieces of the Holland 610 Loader that were taken at a site visit made on September 28, 2009, was not properly authenticated. However, HLC admitted Paragraph 19 of APDC's Statement of Facts in its Motion for Partial Summary Judgment discussing the photographs' documentation of the state of the Holland 610 Loader as it existed on September 28, 2009, and did not dispute their accuracy in its response. (HLC Resp., at 6). Further, Havlin testified in his Supplemental Declaration that the photographs are consistent with his recollection of the condition of the Holland 610 Loader when he last viewed it, which was approximately October 11, 2008. (Havlin Supp. Decl. ¶ 15.) Thus, the photographs are, at a minimum, representative of what the components of the Loader resembled at that time. In any event, I have not relied on the photographs in making a decision on the Motion for Partial Summary Judgment. Accordingly, I deny this portion of the motion to strike.

Finally, I agree with APDC that HLC's request to strike its counsel's letter attached as Exhibit 8 to the Havlin Declaration is without basis. That letter is a response to APDC's counsel letter dated June 8, 2009 in which HLC's counsel denies

liability. While the letter makes a generic "offer for negotiations" and proposes a meeting "to discuss the issues raised in your letter, and to consider a potential resolution to those issues" (*id.*), it does not fall within the rubric of Fed. R. Evid. 408. That Rule only bars admission of communications "when offered to prove liability for, or invalidity of, or amount of a claim that was disputed as to validity or amount." *Id.* As APDC points out, Exhibit 8 was not offered to prove liability but instead to show that HLC had refused payment following rejection of the goods. (Pl.'s Mot. for Partial Summ. J., Mov.'s Statement of Material Facts, ¶ 18.) Accordingly, this portion of the motion to strike is also denied.

B.  Plaintiff's Motion for Partial Summary Judgment

As discussed previously, APDC seeks summary judgment based on HLC's admitted failure to deliver the Holland 610 Loader and HLC's refusal to refund APDC's money. I find that summary judgment must be denied on this claim because there are genuine issues of material fact that preclude the entry of judgment as a matter of law.

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party. *Anaya v. Crossroads Managed Care*

*Sys., Inc.*, 195 F.3d 584 (10th Cir. 1999). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

As to the legal analysis regarding the first claim for relief, both parties agree that the claim is governed by the treaty of the United Nations Convention on Contracts for the International Sales of Goods ["CISG"], art. 40, Apr. 11, 1980, S. Treaty Doc. No. 98-9 (1983), 19 I.L.M. 671 (1983), reprinted at 15 U.S.C. app. (entered into force Jan. 1, 1988)). The CISG applies to contracts of sale of goods between parties whose places of businesses are in different countries and each country is a signatory to the treaty. CISG Art. 1(1)(a). Here, the Holland 610 Loader was sold and shipped from HLC's locations in the United States to Mexico, each of which is a signatory country. *See Treaties in Force* 460 (2009).

The interpretation of a contract for the sale of goods under the CISG must look at the circumstances surrounding the contract. The text of and commentary to the CISG show that a writing between the parties is not conclusive of the terms of their agreement. *See, e.g.,* CISG Art. 11 ("A contract of sale need not be concluded in or evidenced by writing and is not subject to any other requirement as to form. It may be proved by any means, including witnesses."); CISGAC Opinion No. 3, Parol Evidence Rule, Plain Meaning Rule, Contractual Merger Clause and the CISG, 23 October 2004, §2.2, *available at* http://www.cisgac.com/default.php ("[A] writing is one, but only one, of many circumstances to be considered when establishing and interpreting the terms of a contract.").

The CISG requires consideration of a party's statements and other actions, including its conduct subsequent to the conclusion of the contract. CISG Art. 8. Those statements and actions should be analyzed in light of the parties' common intent or, when there is no common intent, in light of the objective, "reasonable person" standard. *Id.*; U.S. State Dep't Analysis of CISG Art. 8, *reprinted at* 2 Guide to the Int'l Sale of Goods Convention 20-145 (West 2009). Under the CISG, testimony of the parties may also contradict the written terms of an agreement. *See MCC-Marble Ceramic Ctr. v. D'Agostino*, 144 F.3d 1384, 1391-92 (11th Cir. 1998) (reversing summary judgment premised on written contract based on non-movant's affidavits); *Mitchell Aircraft Spares, Inc. v. European Aircraft Serv.*, 23 F. Supp. 2d 915, 922 (N.D. Ill. 1998) (same).

APDC first relies on Articles 35 and 36 of the CISG to support its summary judgment motion. Under CISG Art. 35(1), a seller is obligated to "deliver goods which are of the quantity, quality and description required by the contract and which are contained or packaged in the manner required by the contract." Under Art. 35(2), "the goods do not conform with the contract unless they…(a) are fit for the purposes for which goods of the same description would ordinarily be used, []…and (c) possess the qualities of goods which the seller has held out to the buyer as a sample or model . . . ." CISG § 35(2). "[T]he seller is liable in accordance with the contract and this Convention for any lack of conformity which exists at the time when the risk passes to the buyer, even though the lack of conformity becomes apparent only after that time." CISG Art. 36(1); *see also Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1028 (2nd Cir. 1995).

I find after analyzing the parties' positions on this issue that summary judgment should be denied to the extent APDC relies on Articles 35 and 36 of the CISG. First, APDC asserts that when the Holland 610 Loader was delivered in August 2008, it was not refurbished and thus was nonconforming. I find that there are genuine issues of material fact about when the Loader was to be refurbished, *i.e.*, whether the Loader was to be refurbished before it was sent to Mexico or after. While APDC presents evidence in support of its argument that the Loader was to be refurbished prior to its shipment to Mexico, HLC has presented evidence which contradicts that and which shows that the parties agreed it would be refurbished in Mexico.

Indeed, APDC in its summary judgment motion asserts that when it discovered the Holland 610 Loader was inoperable after its delivery in Mexico, HLC then promised to complete refurbishment but did not. This shows that even if the Loader was to initially have been refurbished prior to its shipment to Mexico, there are genuine issues of material fact about whether the parties agreed that it could be refurbished in Mexico once it was delivered there. Thus, there are also genuine issues of material fact as to whether the Holland 610 Loader was nonconforming when it arrived in Mexico.

I also find that there are genuine issues of material fact as to whether the risk ever passed to APDC. As noted above, APDC premises its claim for delivery of nonconforming goods on Article 36(1) of the CISG which provides that the seller is liable "for any lack of conformity [in the goods] which exists at the time when the risk passes to the buyer." Article 69(2) of the CISG governs the passage of risk "if the buyer is bound to take over the goods at a place other than a place of business of the seller." It

provides that "the risk passes [to the buyer] when delivery is due and the buyer is aware of the fact that the goods are placed at his disposal at that place." *Id.*

I find that there are genuine issues of material fact as to where APDC was bound to "take over" the Loader, *i.e.*, at its point of origin in Montana or in Monclova, Mexico, and when it was required to "take over" the Loader, *i.e.*, before or after it was refurbished. Accordingly, I find that there are genuine issues of material fact as to whether the risk passed to APDC. Further, there are genuine issues of material fact as to whether the goods (the Holland 610 Loader) were ever placed at APDC's disposal. Thus, I find that summary judgment is properly denied to the extent APDC relies on Article 36 of the CISG.

APDC claims, however, that even if the parties agreed that the Loader was to be refurbished in Mexico, summary judgment is still appropriate. It relies on the provision that when a contract governed by the CISG does not fix a particular date or period of time for delivery of goods, "[t]he seller must deliver the goods . . . within a reasonable time after the conclusion of the contract." CISG Art. 33. APDC asserts that in no way can it be a reasonable time for delivery of the goods since the Loader was purchased in July 2008 and was still not delivered in May 2009 when APDC asserts that it exercised its right to avoid the contract (and in fact, the Loader has still not been delivered).

Turning to my analysis, "[w]hat is a reasonable time depends on what constitutes acceptable commercial conduct in the circumstances of the case." Official Commentary to 1978 Draft of CISG Art. 33, ¶ 8, *reprinted at* 2 Guide to the Int'l Sale of Goods Convention 20-240 (West 2009). Again, I find that there are genuine issues of material

fact that preclude entry of judgment as to this issue, *i.e.*, whether under the circumstances of this case HLC acted within a reasonable time frame as to delivery of the Loader. There is evidence in the record that the refurbishing would take some time (120 to 180 days) and that APDC had indicated to HLC that it had no immediate need for the Loader due to a purported lack of commercially viable surface mineable coal in its Mexican concessions. Under these circumstances, a reasonable jury could find that HLC's delay in refurbishing the Loader was reasonable. There is also the fact that in May 2009 APDC indicated that it rejected the goods; if this is the case HLC arguably no longer had a duty to deliver the Loader to APDC. Accordingly, I also deny summary judgment on this issue. *See, e.g.*, *Gonzales v. Duran*, 590 F.3d 855, 861 (10th Cir. 2009) (a jury question exists "'when a disputed issues of material fact concerning the objective reasonableness of the defendant's actions exists'") (quotation omitted); *Trout v. Nationwide Mut. Ins. Co.*, No. 07-1369, 2009 WL 721551, at *5 (10th Cir. March 19, 2009) (reasonableness of defendant's conduct "is a quintessential jury question which we would expect to survive summary judgment"); *Yumukoglu v. Provident Life & Acc. Ins. Co.*, No. 01-2200, 2002 WL 1150814, at *3 (10th Cir. May 30, 2002) (reasonableness is generally a question for the jury).

III. CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant HLC's Motion to Strike Declaration of Joseph Havlin in Support of Plaintiff's Motion for Summary Judgment (doc. # 14) is **GRANTED IN PART AND DENIED IN PART** consistent with this Order. It is

FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment (doc. # 8) is **DENIED**.

Dated this 6th day of July, 2010.

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge